UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

JAY CONNOR, individually
and on behalf of a class of all persons and
entities similarly situated,

      Plaintiffs,

vs.                                            Case No. 2:25-cv-07135-DCN

JF MARKETING AND SOLUTIONS, INC.,

RASHID AWAN,

and AREAHOU DIAGNOSTICS LLC

      Defendants

## **OPPOSITION TO DEFENDANT RASHID AWAN'S MOTION TO DISMISS**
### Introduction

Defendant Rashid Awan's threadbare motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate Dr. Awan's vicarious liability for the calls at issue. Specifically, the Plaintiff has alleged and pled sufficient facts to demonstrate, at the very least, that Dr. Awan was vicariously liable for the calls at issue. Specifically, the Plaintiff has pled that he received multiple calls from individuals trying to sell him a genetic testing kit. When Plaintiff played along with the caller, he was transferred to Dr. Awan, who was the *doctor who qualified, prescribed, and ordered the subject genetic test*, and which the Plaintiff received via UPS. These well-pled allegations are more than sufficient under the TCPA, as confirmed by courts in the Fourth Circuit and elsewhere, to minimally plead a case for vicarious, if not direct, TCPA liability as against Dr. Awan. Contrary to Dr. Awan's implicated contention that he had absolutely nothing to do with the calls Plaintiff received, Dr. Awan *asked the Plaintiff questions* during the *very same illegal call* about the *very same kit* that the Dr. Awan prescribed and

1

ordered for the Plaintiff. At the pleadings stage, such allegations are plainly sufficient to give rise to an inference of TCPA liability, including Dr. Awan's vicarious liability for the conduct of the callers who actually placed the illegal calls and transferred those calls to Dr. Awan.

**Legal Standard**

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up). In determining whether a claim is plausible, the court must "draw on its experience and common sense." *Id.* at 678. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a Rule 12(b)(6) motion, the Court accepts well-pled facts as true and draws reasonable inferences in Plaintiff's favor. Whether the defendant was a principal of the actual caller acting as its agent, either through actual authority, apparent authority, or ratification, is a fact-intensive inquiry not suited for resolution on the pleadings, provided the complaint plausibly alleges calls were made on a defendant's behalf and the defendant accepted and acted upon the

resulting lead. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (affirming TCPA vicarious liability jury verdict and holding that the existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury).

**Argument**

1.  <u>Plaintiff adequately pleads a vicarious liability theory against Dr. Awan.</u>

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016). (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)). "The existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016 U.S. Dist. LEXIS 133299, at *33 (S.D.N.Y. Sep. 28, 2016) (internal quotation marks omitted); *Krakauer*, 925 F.3d at 660.

Section 227(c)(5) of the TCPA authorizes private suits by any person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the regulations promulgated thereunder. The Fourth Circuit has held that this "on behalf of" applies to calls placed by a seller's (Dr. Awan's and Areahou's) telemarketer (JF Marketing). *Krakauer*, 925 F.3d at 660. Awan's motion applies the wrong lens and concedes the right one. His brief argues Plaintiff failed to allege Awan "initiated" calls or "caused" them to be initiated. But under Fourth Circuit law, Plaintiff needs to plead *either* direct *or* vicarious liability, and the operative question in this case is whether the calls were made on Awan's behalf under agency principles, a standard the complaint plausibly meets. *Id.* at 652-55. "I didn't personally dial the calls" is thus not a defense. Section 227(c) imposes liability for calls made "by or on

behalf of" a seller. Pleading direct initiation is unnecessary where agency is plausibly alleged. *Id.*

As will be explained below, Plaintiff has adequately pled a case for vicarious liability under any of the three generally accepted theories of vicarious TCPA liability. Here, the selling conduct is somewhat unique in that the "sale" of the good or service being promoted, the genetic test kit, is really two sales bundled as one. The first is the kit itself, which is provided by Defendant Areahou Diagnostics, and the second is the prescription and consultation necessary to qualify for in order to obtain the kit, which is provided by Defendant Dr. Awan.
An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *see also Krakauer*, 925 F.3d at 659-660 (stating the same and citing the Restatement). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals . . . vicariously liable for acts of their agents . . . in the scope of their authority.'" *Id.* at 660 (quoting *Meyer v. Holley*, 537 U.S. 280, 285-86 (2003)). "An essential element of agency is the principal's right to control the agent's actions", but this concept of control "embraces a wide spectrum of meanings", including "what the agent shall and shall not do, in specific or general terms." Restatement (Third) of Agency § 1.01 cmt f. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*

A plaintiff in a TCPA case is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *17-21 (D.N.J. Nov. 20, 2018). "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill.*

4

*Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016). For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control.").

South Carolina law similarly prohibits initiating or causing to be initiated a solicitation to a number on the National Do Not Call Registry and expressly covers calls made "by or on behalf of the person on whose behalf the telephone solicitation is being made." S.C. CODE ANN. § 37-21-70(A). For the same reasons that the TCPA claim is plausibly pled under an agency/vicarious liability theory, the SCTPPA claim against Dr. Awan is plausibly pled under the same theory.

The complaint here adequately pleads facts supportive of agency, exceeding Rule 8's threshold and providing more than fair notice. It alleges a coordinated campaign to sell genetic test kits where (1) the telemarketer pitched the Areahou test kit, (2) Plaintiff was transferred to Dr. Awan, who conducted intake about the Areahou kit, (3) plaintiff received a prescription requisition sheet naming Dr. Awan and JF Marketing with the kit, and (4) additional calls referenced that same transaction, even after do-not-call requests. As will be explained, those

allegations permit the reasonable inference that the telemarketer acted with at least apparent authority (the seller's identity manifested through the transfer to Dr. Awan and the requisition naming him) and that Dr. Awan ratified the calls by accepting their benefits (processing the intake, writing the prescription, and having the kit shipped pursuant to his orders as a licensed physician, and receiving payment therefor). Plaintiff also identifies the dates and content of eight calls, the identities used by callers, the transfers to Dr. Awan, Dr. Awan's role, and the fulfillment documents tying Dr. Awan to the telemarketing pipeline.

      The pled transfer to Dr. Awan matters. Dr. Awan claims the complaint shows only a single conversation with him and therefore no link to the telemarketing. But that transfer occurred *during* an illegal call (preceded by identical earlier calls), followed by a kit and paperwork bearing Dr. Awan's name (and further calls referencing it). This is exactly the kind of manifestation and acceptance that courts across the country have held support apparent authority and ratification at the pleadings stage. Those are far more than labels and conclusions. Those facts are more than sufficient to give rise to the conclusion of liability.

      Dr. Awan characterizes the allegations in the Complaint as "threadbare" because "Mike" and two intermediate agents are unnamed and their exact functions are not specified. (MTD at 4.) But Rule 8 does not require naming every agent or telemarketer involved in illegal calling conduct at the pleading stage, particularly where the precise call path and Dr. Awan's own conduct are alleged in sufficient detail to give sufficient notice to Dr. Awan of the claims against him and the grounds upon which they rest, and particularly when Dr. Awan is the person in the best position to know who these individuals are. The sequence of the telemarketing, together with the type of services being promoted (test kits requiring a prescription), and their bundled nature, leads to an adequate inference that Dr. Awan was involved in the calling conduct at issue.

To state the obvious, accepting Dr. Awan's position begs the question as to why a licensed medical professional is accepting call transfers from some randos, of whose activities he allegedly has no knowledge, and then writing prescriptions for additional randos for a particular genetic testing kit they are selling with illegal telemarketing. Defendant's position stretches credulity, because in denying liability or knowledge of the marketing conduct, Defendant implicitly concedes that he necessarily would have acted in a grossly contrary manner to his very own medical license and would require this Court to accept the conclusion that he is essentially operating as a pill mill. On the other hand, the details about the contractual relationships between the Defendants, the source, nature, scope, and extent of Dr. Awan's compensation, telemarketing scripts, and control over the telemarketing conduct, are all appropriately the subject of discovery, not a basis for dismissal. Applying the facts of this case as pled here, this Court can easily make out a basis for vicarious liability under any one of the three generally accepted theories thereof.

**Actual Authority**

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Actual authority may be given expressly—such as when the principal states "in very specific or detailed language" how an agent is to act—or impliedly—such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 U.S. Dist. LEXIS 128877, at *16 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious liability case); *Cunningham v. Rapid Response Monitoring Servs.,*

*Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business ….").

Actual agency "does not require the principal to specify the singular acts for which her or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023, at *21 (M.D. Fla. Apr. 10, 2017). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing Restatement (Third) of Agency § 2.02(1)). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual directed an agent's calls by alleging facts giving rise to an *inference* that the defendant was "involved" in the "sales practices and marketing procedures." *Id.* at 922-23; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, the Plaintiff has more than adequately pled facts giving rise to such an inference because he has pled that he spoke to Dr. Awan *during the illegal call*, who asked kit-specific questions, and ultimately wrote the prescription and lab requisition for the kit which was shipped to the Plaintiff. Plaintiff alleges a coordinated calling campaign designed to generate and process orders for Areahou genetic testing with Dr. Awan serving as the physician nexus. After multiple calls from "Mike," Plaintiff was transferred "before finally speaking with the Defendant Rashid

8

Awan, who is a doctor," who then asked "a series of questions" related to the Areahou genetic testing kit. Following that call, Plaintiff received the Areahou genetic swab kit, and the requisition identified the source as "Dr. Rashid Awan and JF Marketing and Support." The kit directed shipment to Areahou for laboratory analysis. Dr. Awan also attempted to charge the subject insurance policy for the kit. Without Dr. Awan's signature on the prescription, the Plaintiff would never have received any kit, and Dr. Awan would never have been paid. And no self-respecting physician would write a prescription for some rando referred to him by some other rando over an allegedly unsolicited and completely foreign telephone call to them. Doctors do not write prescriptions for anyone that calls them without some sort of relationship with the caller. That is more than sufficient to give rise to the inference of actual authority.

These facts support a reasonable inference that the telemarketers acted with authority granted jointly by Dr. Awan (and JF Marketing/Areahou) to solicit and screen patients, transfer qualified prospects to Dr. Awan, and effectuate fulfillment, conduct within the scope of an explicitly authorized pipeline. Additionally, the complaint alleges that Defendants failed to implement or honor do-not-call policies as required by 47 C.F.R. § 64.1200(d), despite repeated do-not-call requests, which is probative of centralized campaign control and authorization. Plaintiff told "Mike" he did not want more calls, but within two hours, he received another call from "Mike," and later multiple additional calls, despite repeated DNC requests. Those facts plausibly show agents who operate under directives inconsistent with TCPA compliance and subject to principals, such as Dr. Awan's control.

The sequential transfers during the illegal call culminating with Dr. Awan, followed by his continuation of the scripted intake and prescription writing process, plausibly reflects agents acting with authority to solicit and then hand off the consumers to Dr. Awan for completion of

the sales pipeline. At minimum, these facts plausibly allege that the callers acted subject to Awan's right to control the manner of lead generation and intake, particularly with his medical license on the line, satisfying agency at the pleading stage. These facts demonstrate the requisite control over the telemarketer to permit discovery on the relationship as between and among the Defendants. And, without seeing the precise nature of the contract and agreement between Dr. Awan and the other Defendants, an insurmountable hurdle at the pleadings stage, the Plaintiff nevertheless alleges a good faith inference as to the aforementioned indicia demonstrating agency. The Plaintiff has sufficiently alleged agency under an actual authority theory.

**Apparent Authority and Ratification**

Apparent authority "arises when a third-party reasonably believes that the [] agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011). Apparent authority can exist even where, unlike here, a principal does not communicate directly with a consumer. *See Hayhurst*, 2020 U.S. Dist. LEXIS 128877, at *24-25 ("Although Keller Williams is not alleged to have made any statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must be 'traceable' to it even if it did not make them directly to Hayhurst. And, its manifestations 'may take many forms'.").

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on

10

behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, *or* that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

      Here, Plaintiff sufficiently pleads Dr. Awan's vicarious liability predicated on apparent authority and ratification theories based on the same allegations supporting direct liability and an actual authority theory. As has been discussed, apparent authority arises when a principal's manifestations cause a third party reasonably to believe the actor is authorized to act on the principal's behalf. The sequence here created that reasonable belief. Specifically, with regard to *apparent* authority, it is and was reasonable for Plaintiff to believe that Defendant Awan authorized JF to sell the Areahou test kits he was prescribing using illegal telemarketing, and that he authorized the sales process as alleged in the Complaint. The agents represented that they were all affiliated, the call pipeline led directly to Dr. Awan, and Dr. Awan continued the transaction without disavowal. The telemarketers identified the product as an Areahou Diagnostics genetic testing kit. Multiple agents transferred Plaintiff through a chain of representatives and ultimately to Dr. Awan, who personally conducted intake concerning the same kit. Shortly thereafter, Plaintiff received the kit, with requisition paperwork listing "Dr. Rashid Awan and JF Marketing and Support." The seamless transition from the telemarketing sales pitch to a transfer on that very same call to Dr. Awan and fulfillment bearing his name

11

constitutes a manifestation from the principal sufficient to clothe the callers with apparent authority. *See Krakauer*, 925 F.3d at 660 (holding vicarious liability was appropriate where marketers held themselves out by selling the principal's services and consumers were led to believe calls were on principal's behalf). Relatedly, the conduct here supports the appearance that the callers were authorized to solicit on Dr. Awan's behalf.

Even if apparent authority were disputed, Dr. Awan ratified the telemarketers' conduct by accepting the benefits of, and failing to repudiate, the unlawful calls after knowledge of material facts. *See id.* Dr. Awan knowingly accepted the benefits of the illegal calls made to numbers on the National Do Not Call Registry. Dr. Awan was directly involved in the calls by getting *exactly* what was intended from the calls, the opportunity to offer, and charge insurance for, bundled medical and consultation services associated with the test kit sold illegally over the telephone. *See, e.g.*, *Aranda*, 179 F.Supp. 3d at 833 (holding sellers ratified telemarketers' conduct by accepting the benefits of the unlawful calls in TCPA case); *Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at *8 (S.D. Fl. 2015) (holding allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. 2018) (holding a reasonable jury could find defendant liable on ratification theory where "Alarm.com knew of Alliance's allegedly illegal telemarketing conduct and accepted the benefits therefrom").

The importance of Dr. Awan's involvement in the calls and prescribing activity to proving apparent authority and ratification in this case cannot be understated. Dr. Awan eschews actual argument on this point and brushes off the Plaintiff's allegations while failing to address why and how he came to speak to Plaintiff. That Dr. Awan has moved to dismiss here but has

failed to explain himself or why his medical license was implicated in an illegal telemarketing call, a *shipped test kit*, and insurance charge, speaks volumes. By knowingly accepting not only the transferred call but also using the fruits of the solicitation (receiving payment for the shipped test kit and consultation) without repudiation, Awan plausibly ratified the calls. In any event, the point remains that the Complaint need not prove ratification. It need only plausibly allege facts from which ratification can be inferred, which it does by alleging Awan's acceptance and continuation of the telemarketing interaction and goods and services sold therein.

As a result, Plaintiff sufficiently alleges Dr. Awan's vicarious liability based on apparent authority and ratification based on manifestations traceable to him and benefits derived and rendered unto him, as well.

## Conclusion

Accepting the well-pled facts and drawing reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that the telemarketing calls were made on behalf of Dr. Awan and that Dr. Awan accepted and acted upon the resulting lead, supporting vicarious liability under the TCPA and parallel state law. Dr. Awan's motion asks the Court to require direct-dialing allegations and to ignore reasonable inferences from the pleaded transfer chain, contrary to Rule 8. The motion to dismiss should be denied. Because the complaint plausibly alleges that the telemarketing calls were made by agents acting with actual and apparent authority for, and ratified by, Dr. Awan, his motion to dismiss should be denied.

s/ David A. Maxfield
_____
David A. Maxfield, Esq. Fed ID No. 6293
DAVE MAXFIELD, ATTORNEY, LLC
P.O. Box 11865
Columbia, SC 29211-1865
(803) 509-6800

*Attorney for Plaintiff*

14