IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JAY CONNOR, *individually and on behalf of a class of all persons and entities similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 2:25-cv-07135-DCN |
| vs. | ) ) | **ORDER** |
| JF MARKETING & SUPPORT, LLC, RASHID AWAN, and AREAHOU DIAGNOSTIC, LCC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

The following matter is before the court on defendant Rashid Awan's (" Dr. Awan") motion to dismiss for failure to state a claim, ECF No. 6. For the reasons set forth below, the court denies Dr. Awan's motion to dismiss.

## I. BACKGROUND

This matter arises from alleged violations of federal and state laws that prohibit contacting individuals at telephone numbers that have they placed on the on the national Do Not Call registry and similar registries required to be maintained by individual business entities. ECF No. 1, Compl. ¶ 3. Plaintiff Jay Connor is a citizen of South Carolina, residing in Charleston County. Id. ¶ 8. Defendant JF Marketing & Support, LLC ("JF Marketing") is a Florida limited liability company. Id. ¶ 9. Dr. Awan is physician licensed in California. Id. ¶ 10. Defendant Areahou Diagnostics, LLC ("Areahou") (together, with JF Marketing and Dr. Awan, "defendants") is a genetic testing laboratory located in Texas. Id. ¶ 11.

1

Connor placed his residential telephone number on the national Do Not Call registry in 2009.  Id. ¶¶ 32–34.  He alleges that defendants contacted him eight times at his residential telephone number without his consent.  Id. ¶¶ 35–36.

On April 16, 2025, Connor received a telephone call from "Mike" who stated that he was offering a genetic testing kit on behalf of "Genetic Advocate Lab".  Id. ¶¶ 37–38.  While posing as his father, Connor provided personal information to "Mike".  Id. ¶ 39.  Ultimately, Connor stated that he should not be contacted further.  Id. ¶ 40.  Two hours later, "Mike" called Connor again from a different telephone number.  Id. ¶ 41.  Connor restated that he did not want to be contacted and ended the call.  Id. ¶ 42.

The next day, "Mike" placed a third telephone call to Connor.  Id. ¶ 43.  This time, Connor was transferred to two additional people before finally speaking with Dr. Awan.  Id. ¶ 44.  Connor and Dr. Awan discussed Areahou's genetic testing kits.  Id. ¶ 45.  Shortly thereafter, Connor received an Areahou genetic testing kit in the mail.  Id. ¶ 46.  The package contained documents indicating that the kit was sourced by Dr. Awan and JF Marketing.  Id. ¶ 47.

Connor received the fourth and fifth telephone calls on April 21, 2025.  Id. ¶¶ 49–51.  When he answered, "Michael" asked whether Connor had received an Areahou genetic testing kit.  Id. ¶ 52.  Connor, again, asserted that he did not wish to be contacted and ended the call.  Id. ¶ 53.

The sixth telephone call came from "Mike" on May 2, 2025.  Id. ¶¶ 54–56.  Over the course of the call, Connor was transferred to "Paul", "Jamie", and "Kara".  Id. ¶ 56.  "Kara" stated that she was a representative of "AEM Diagnostics."  Id. ¶¶ 57–58.  The seventh telephone call on May 5, 2025 came from "Jonathan" with "Patient Care

Services" who stated that he was calling about genetic testing kits.  Id. ¶¶ 46–47.

"Jonathan" used an identical script to the one used by "Mike" two days earlier.  Id. ¶ 60.

The eighth telephone call occurred on May 7, 2025.  Id. ¶ 61.  Connor spoke with the same "Paul" from the May 2, 2025 telephone call, discussing their conversation from five days prior.  Id. ¶¶ 62–63.  He requested that he no longer be contacted regarding genetic testing kits.  Id. ¶ 64.

Connor, individually and on behalf of a class of all persons and entities similarly situated, filed this action on July 14, 2025.  ECF No. 1, Compl.  The complaint asserts causes of action for: (1) violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5) as to the national Do Not Call registry, (2) violations of the TCPA as to defendants' internally maintained do not call registry, and (3) violation of the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code Ann. § 37-21-10 et. seq.  Id. ¶¶ 56–71.

Dr. Awan filed a motion to dismiss for failure to state a claim on October 13, 2025.  ECF No. 6.  On October 27, 2025,  Connor responded in opposition.  ECF No. 7. Dr. Awan filed a supplement to his motion to dismiss on November 7, 2025, ECF No. 12, to which Connor responded in opposition on November 21, 2025, ECF No. 14.  The court held a hearing on the motion December 18, 2025.  ECF No. 18.  As such, the motion is fully briefed and now ripe for the court's review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v.

Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, Rule 8 requires a complaint to contain: (1) "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). Moreover, under Rule 8(d), "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   DISCUSSION

Dr. Awan moves to dismiss Connor's TCPA and SCTPPA claims. ECF No. 7. Dr. Awan argues that Connor has failed to allege sufficient facts from which the court can infer that he initiated the telephone calls that give rise to this action. Id. at 3–4. Further, Dr. Awan contends that Connor's complaint does not contain allegations that their telephone discussion was without consent or that Connor asked Dr. Awan to refrain from

contacting him.  Id.  In opposition, Connor argues that he has properly pleaded his claims

under a theory of vicarious liability because the individuals placing the telephone calls

possessed actual or apparent authority from Dr. Awan.  ECF No. 7 at 3–13.  The court

first provides an overview of the TCPA and SCTPPA before turning to whether Connor

has sufficiently pleaded a claim under either statute.

### A.  The TCPA and SCTPPA

"Enacted in 1991, the TCPA was a response by Congress to the reactions of

American consumers over intrusive and unwanted phone calls."  Am. Ass'n of Pol.

Consultants, Inc. v. Fed. Commc'ns Comm'n, 923 F.3d 159, 161–62 (4th Cir. 2019).

Congress had observed that Americans were "outraged over the proliferation of intrusive,

nuisance calls to their homes from telemarketers."  Krakauer v. Dish Network, LLC, 925

F.3d 643, 649 (4th Cir. 2019) (quoting Pub. L. No. 102-243, 105 Stat. 2394 (1991)).  As a

result, the national Do Not Call registry was established, 47 C.F.R. § 64.1200(c)(2), and

telemarketers were required to implement "procedures for maintaining a list of persons

who request not to receive telemarketing calls made by or on behalf of that person or

entity," 47 C.F.R. § 64.1200(d).

The TCPA prohibits a "telephone solicitation" to a number that has been placed

on the national Do Not Call registry or the do-not-call list maintained by a telemarketer.

47 U.S.C. § 227(c); see C.F.R. § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or

practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound

telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-

call" registry, maintained by the Commission.").  Limited exceptions to the TCPA exist,

such as if the caller and the recipient have an "established business relationship" or if the caller has the recipient's "prior express invitation or permission." 47 U.S.C. § 227(a)(4).

The TCPA provides a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5). Thus, to state a claim under Section 227(c)(5) of the TCPA, a plaintiff must allege: "(1) receipt of more than one telephone call within any 12-month period (2) by or on behalf of the same entity (3) in violation of the regulations promulgated by the FCC." Lourie v. Papa John's Int'l, Inc., 2024 WL 5497082, at *3 (N.D. Ga. June 25, 2024) accord Wagner v. CLC Resorts & Devs., Inc., 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014).

South Carolina enacted the SCTPPA to thwart unwelcome telemarking calls. See S.C. Code Ann. § 37-21-10 et. seq. Like the TCPA, the SCTPPA provides that a "telephone solicitor may not initiate, or cause to be initiated, a telephone solicitation to a telephone number on the National Do Not Call Registry maintained by the federal government." Id. § 37-21-70(A). The SCTPPA prohibits telephone solicitations to a recipient who has "previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made." Id. § 37-21-70(B). Recipients of telephone calls in violation of the SCTPPA have a private right of action for damages against the caller. Id. § 37-21-80.

6

**B. Connor Has Pleaded Vicarious Liability Under Apparent Authority**

The court finds that Connor has stated claims under the TCPA and SCTPPA because he has sufficiently pleaded a plausible basis for holding Dr. Awan vicariously liable for the conduct of his agents under the doctrine of apparent authority. The Fourth Circuit has held that the plain language of the TCPA contemplates that an entity can be held liable for "calls made on its behalf, even if not placed by the company directly." Krakauer, 925 F.3d at 659 (citing 47 U.S.C. § 227(c)(5)). The Federal Communications Commission (the "FCC") interprets the TCPA to provide for vicarious liability for violations of Section 227(c). See Hodgin v. UTC Fire & Sec. Ams. Corp., 885 F.3d 243, 251 (4th Cir. 2018) (citing In re Joint Petition filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6584 (2013)). "According to the FCC, vicarious liability under the TCPA is governed by the federal common law of agency, 'including not only formal agency, but also principles of apparent authority and ratification.'" Gallipeau v. Renewal by Andersen LLC, 742 F. Supp. 3d 508, 517 (D.S.C. 2024) (quoting Dish Network, LLC, 28 FCC Rcd. at 6584 (2013)). "To determine these common law principles, courts have traditionally looked to the Restatement of Agency." Hodgin, 885 F.3d at 252 (citing Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 752, (1989). Like claims under the TCPA, courts in this district apply common law agency principles to determine whether a defendant caused a telephone solicitation in violation of the SCTPPA. See, e.g., Gallipeau, 742 F. Supp. 3d 508, 520–21.

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal." Restatement (Third) of Agency §

2.03 (2006). Apparent authority is created by "expressive conduct by the principal toward a third party through which the principal manifests assent to action by the agent with legal consequences for the principal." Id. § 3.03 cmt. b; see also In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig., 223 F. Supp. 3d 514, 520 (N.D.W. Va. 2016) ("To create apparent authority, the principal must speak, write, or otherwise act toward a third party."). A principal is accountable only if a third party's belief that an actor possesses authority to act as an agent "is reasonable and is traceable to a manifestation of the principal." Restatement (Third) of Agency § 2.03 cmt. c (2006); see also Sing Fuels Pte Ltd. v. M/V Lila Shanghai, 39 F.4th 263, 275 (4th Cir. 2022) ("An agent can bind a principal through apparent authority but only when the principal, by her acts or omissions, causes a third party to rely on the agent's authority to act on the principal's behalf.").

Connor's complaint contains allegations that he was contacted by defendants and their agents at a telephone number he had previously placed on the national Do-Not-Call registry. See Compl. Each individual caller identified themselves as a representative of a medical provider and spoke to Connor about genetic testing kits. Id. ¶¶ 38, 52, 57, 60. Connor spoke with Dr. Awan personally about Areahou genetic testing kits on the third telephone call. Id. ¶ 45. He then received an Areahou genetic testing kit in the mail that contained documentation that the kit was sourced by Dr. Awan. Id. ¶¶ 46–47. Subsequently, Connor was contacted five additional times by callers who stated that they wanted to discuss and confirm his receipt of the kit. Id. ¶¶ 52, 56, 60, 63. At the conclusion of each telephone call from defendants, Connor stated that he should not be contacted again. Id. ¶ 64.

Connor has alleged sufficient facts to plausibly show that he reasonably believed that he was receiving telephone calls on behalf of Dr. Awan, and that his belief was traceable to Dr. Awan's manifestations. See Restatement (Third) of Agency § 2.03 cmt. c (2006). Dr. Awan made two manifestations to Connor: discussing Areahou genetic testing kits during their telephone call and mailing the kit to Connor. See Compl. ¶¶ 45–47. It was reasonable for Connor to believe that the callers had apparent authority from Dr. Awan to contact him because Dr. Awan asked Connor similar medical questions related to genetic testing. See Monitronics Int'l, Inc., 223 F. Supp. 3d at 520 ("The essential element [of apparent authority is that] there must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party" that another individual is an agent of the principal."). By sending Connor an Areahou genetic testing kit, Dr. Awan appeared to manifest assent to the actions of all eight callers who each stated that they wished to speak to Connor about genetic testing kits. See Restatement (Third) of Agency § 3.03 cmt. b (2006). Because Connor has sufficiently pleaded facts supporting Dr. Awan's vicarious liability on the basis of apparent authority, the court denies Dr. Awan's motion to dismiss for failure to state a claim under the TCPA and SCTPPA.

9

## IV.   CONCLUSION

For the foregoing reasons the court DENIES Dr. Awan's motion to dismiss for failure to state a claim.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 24, 2026**
**Charleston, South Carolina**